Filed 9/21/15  Herdegen v. Morton & Pitalo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MARY LOUISE HERDEGEN et al., | C074798 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0028931) |
| v. | |
| MORTON & PITALO, INC., et al., | |
| Defendants and Respondents. | |

While walking along Old Auburn Road in Roseville, plaintiff Mary Louise Herdegen was struck and severely injured by a car driven by Ashok Kumar.  Herdegen filed suit against Kumar; defendant City of Roseville (Roseville); defendants Southfork Park Partnership and Ewing Development, Inc. (Southfork), the developer of the intersection where the accident occurred; and defendant Morton & Pitalo, Inc. (Morton & Pitalo), the engineering firm responsible for improvements to the intersection.  Roseville, Southfork, and Morton & Pitalo (collectively, defendants) each moved for summary judgment, arguing Herdegen's injuries were not caused by a dangerous condition at the intersection.  The trial court granted all three motions.  Herdegen appeals, challenging the

1

trial court's granting of summary judgment in favor of defendants, arguing (1) there are triable issues of fact as to whether the dangerous condition of the intersection caused her injuries, and (2) her claims against Southfork and Morton & Pitalo are not barred by the statute of limitations. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Site of the Accident

On the date of the accident, Old Auburn Road was a two-lane road running north and south in Roseville. The cross-street where the accident occurred is Allegretto Way on the east side of the intersection and Monet Way on the west. The southern approach of Old Auburn Road curves westward through the intersection. The speed limit on Old Auburn Road was 40 miles per hour.

Both Allegretto and Monet had stop signs at the intersection. Old Auburn Road had no stop sign. The intersection was built in the mid-1990's by Southfork, which hired Morton & Pitalo as the designer.

### Approval of Morton & Pitalo's Design

As part of Roseville's approval process of the design prepared by Morton & Pitalo for the intersection, several city engineers reviewed the design. First, Roseville associate engineers reviewed the design for Allegretto and Monet Ways for compliance with federal, state, and city design standards. Then, the senior engineer over land development reviewed and approved the design. Finally, the design was submitted to the public works director and city engineer, Larry Pagel, for his review and approval.

Following his review, Pagel concluded that Morton & Pitalo's intersection design complied with all federal Manual on Uniform Traffic Control Devices, Caltrans, and Roseville design standards and guidelines. Subsequently, Pagel approved the intersection design, which included installation of stop signs on Allegretto and Monet Ways but did not include stop signs on Old Auburn Road. Roseville determined that the stopping sight lines for northbound drivers on Old Auburn Road satisfied applicable design standards.

2

In addition, as part of its approval of the design, Roseville approved the geometric alignment elements of the intersection and determined they met all applicable guidelines.

**The Accident**

On May 28, 2010, Herdegen took a walk southbound along Old Auburn Road on the sidewalk on the east side, adjacent to the northbound lane. The weather was clear, dry, and sunny. Herdegen came to the corner of Old Auburn Road and Allegretto Way and began to cross Allegretto Way. Kumar was driving in the northbound lane of Old Auburn Road, approaching from the south at 35 to 40 miles per hour. Kumar described the traffic as "normal, there was no rush," and he had no vehicles in front of him. As Herdegen walked south across Allegretto Way, Kumar drove through the intersection, veered to his right, and struck her.

**Subsequent Investigation**

Roseville's Multidisciplinary Accident Investigation Team (MAIT) performed an accident investigation. The MAIT conducted an extensive investigation of the accident, including multiple witness interviews, a visualization study, a speed analysis, a debris field analysis, a physical examination of the accident location, an examination of the biological evidence, drag factor testing, taking measurements and photographs, and a vehicle inspection. The MAIT determined Kumar caused the accident by driving right of the designated northbound lane on Old Auburn Road and striking Herdegen, who was on the edge of the road in the crosswalk.

Nothing obstructed Kumar's view as he approached the intersection of Allegretto Way and Old Auburn Road. In deposition, Kumar testified there were no obstructions that obscured his view of the intersection.

Officer Todd Lynn, a member of the MAIT, testified he was not aware of any obstructions in Kumar's path of travel that obscured the intersection where Kumar struck Herdegen. In addition, Officer Lynn stated the roadway design was not considered a potential contributing factor to the accident.

3

Another Roseville police officer who investigated the accident, Officer Marc Glynn, testified he was not aware of any evidence that any visual obstruction of the intersection was a contributing factor of the accident. He also testified that neither he nor anyone else connected to the police department made any determination that the design of the roadway was a factor in causing the accident. Nor did the absence of a stop sign in the direction in which Kumar was travelling contribute to the accident.

**Herdegen's Suit**

Herdegen and her husband filed suit against defendants for damages resulting from her injuries. Herdegen alleged a cause of action against Roseville for dangerous condition of public property. The dangerous condition arose from a combination of factors, including limited visibility due to obstructions at and around the intersection, the curvature of the road, and the speed limit on Old Auburn Road. These dangers were increased by the lack of stop signs or warning signs and posed a foreseeable risk of injury when used with due care by the public.

Against Morton & Pitalo and Southfork, Herdegen alleged a cause of action for negligence and defective design of the intersection. The negligence and defective design allegation echoed the claims of limited visibility and the high rate of speed on Old Auburn Road.

**Roseville's Motion for Summary Judgment**

In its motion for summary judgment, Roseville argued the undisputed facts showed the intersection was not dangerous and that Herdegen's injuries were not caused by the intersection's configuration. Roseville set forth evidence that Herdegen's visibility to Kumar was more than adequate along the roadway and at the intersection where the accident occurred. Roseville also argued Government Code section 830.4

4

provided immunity from Herdegen's allegation concerning the lack of a stop sign on Old Auburn Road.[1]

In response, Herdegen stated their action was not based merely on the failure to install a stop sign, but also on the intersection's being dangerous for a variety of reasons. Herdegen presented evidence by Dr. William R. Neuman, an engineering professor. Dr. Neuman stated the corner sight distance for a driver waiting at the stop sign on Monet Way and preparing to make a left turn onto Old Auburn Road heading north would have been inadequate in light of the 40-miles-per-hour speed limit. Because of the road curvature and various obstructions, the clear line of sight from Monet Way looking south was only about 250 feet, less than the 440 feet required by Caltrans standards.

The trial court issued a tentative ruling granting Roseville's motion for summary judgment on the causation issue. During oral argument, Herdegen asserted: "So, the dangerous condition, that the specific thing that caused the dangerous condition was the sight line deficiency, but that demanded and mandated the placement of an all-way stop. The all-way stop would have prevented this accident from occurring. [¶] . . . [¶] The dangerous condition here is the absence of a stop sign. Had the stop signs been in place, no collision is our argument, or it's a factual question." The court affirmed its tentative ruling.

In granting Roseville's motion, the court found: "Plaintiffs raise a triable issue of material fact with respect to whether the property was in a dangerous condition at the time of the injury. Plaintiffs submit evidence to support the assertion that the subject intersection contained inadequate site [*sic*] line distance for vehicles stopped on Monet Way, intending to turn left to travel northbound on Old Auburn Road, thus rendering the subject intersection dangerous. [Citation.] However, plaintiffs fail to raise a triable issue

_____

[1] All further statutory references are to the Government Code unless otherwise designated.

5

of material fact regarding whether the subject accident was proximately caused by the alleged dangerous condition. Significantly, at the time that plaintiff was injured, no vehicles were attempting to turn onto Old Auburn Road from Monet Way. Rather, defendant Ashok Kumar is alleged to have been driving northbound on Old Auburn Road when he failed to negotiate a curve in the road, thus drifting to the right and hitting plaintiff Mary Herdegen as she walked in an unmarked crosswalk. Although plaintiffs contend that the presence of an all-way stop at the intersection may have prevented the accident, the alleged dangerous condition (inadequate sight line distance for vehicles turning left onto Old Auburn Road) has no causal connection to the third party conduct which in this case actually injured the plaintiff. [Citation.]"

The trial court entered the order granting Roseville's motion for summary judgment, and judgment in favor of dismissal was also entered. Herdegen filed a timely notice of appeal.

**Morton & Pitalo's Motion for Summary Judgment**

Morton & Pitalo also filed a motion for summary judgment. In its motion, Morton & Pitalo offered the declaration of Terry Lowell, P.E., who stated the improvement drawings prepared by Morton & Pitalo complied with the applicable standard of care at the time. Morton & Pitalo also argued the sight line distance at the intersection was not a cause of Herdegen's injury.

The trial court granted the motion, finding: "To establish a breach of duty, plaintiffs must submit evidence showing that [Morton & Pitalo] failed to use the skill and care of a reasonably careful civil engineer in similar circumstances. Plaintiffs fail to raise a triable issue of material fact regarding whether [Morton & Pitalo] breached its duty to use the skill, prudence, and diligence commonly possessed and exercised by other members of the profession. Although plaintiff has submitted two declarations of their expert witness, William Neuman, Mr. Neuman's declarations are devoid of an opinion

6

that [Morton & Pitalo] fell below the standard of care in connection with its preparation of the plans for the roadway and intersection at issue in this litigation."

In addition, the court reiterated its finding in connection with Roseville's summary judgment motion that Herdegen failed to raise a triable issue of material fact regarding whether the accident was proximately caused by the alleged negligence. The court entered judgment for Morton & Pitalo. Herdegen filed a timely notice of appeal.

**Southfork's Motion for Summary Judgment**

Southfork's motion for summary judgment echoed the motion brought by Morton & Pitalo. Southfork argued the intersection design met all design standards and the sight line was not the proximate cause of Herdegen's injuries. The court granted the motion. Herdegen filed a timely notice of appeal.

## DISCUSSION

## STANDARD OF REVIEW

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party, whether plaintiff or defendant, initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Id*. at p. 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id*. at p. 851.) "Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Ibid*., italics omitted.) Once the moving party has met its burden, the burden shifts to the opposing party to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subds. (a), (p)(2).)

7

We review de novo the record and the determination of the trial court. First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable issue of fact. (*Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290; *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067 (*Salas*).)

**Dangerous Condition Alleged Against Roseville**

Section 830.2 provides the standard of review for claims of a dangerous condition: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

Several provisions of the Government Code explain the liability of a public entity for a dangerous condition of public property. Under section 835, a public entity is liable for an injury caused by a dangerous condition of its property if the plaintiff establishes the property was in a dangerous condition at the time of the injury, the dangerous condition proximately caused the injury, and the dangerous condition created a reasonably foreseeable risk of the kind of injury suffered.

In addition, the plaintiff must show either "(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

8

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835.)

A public entity has actual notice of a dangerous condition if it has actual knowledge of the existence of the condition, and knows or should know of its dangerous character.  (§ 835.2, subd. (a).)  To establish constructive knowledge on the part of a public entity, the plaintiff must show the condition existed long enough and was of such an obvious nature that, with due care, the public entity should have discovered the condition and its dangerous character.  (§ 835.2, subd. (b).)

At issue in the present case is section 830.4, which states:  "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

**Professional Negligence Alleged Against Morton & Pitalo and Southfork**

Herdegen alleged causes of action for professional negligence against Morton & Pitalo and Southfork.  The elements of a cause of action for professional negligence are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise; (2) breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.  (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095.)

**The Common Bond Between the Causes of Action**

Both the cause of action for a dangerous condition against Roseville and the cause of action for professional negligence against Morton & Pitalo and Southfork share one important element:  there must be a proximate causal connection between the dangerous condition or professional negligence and the plaintiff's injury.  The trial court found no

9

such causal connection between the design of the intersection and Herdegen's injuries. We agree with the trial court's assessment of the evidence.

To establish causation a plaintiff must prove that the defendant's conduct was a substantial factor in bringing about his or her harm. Evidence of causation must rise to the level of a reasonable probability based upon competent testimony. A possible cause becomes probable only when it becomes more likely than not that the injury was a result of its action. A party's conduct is not a cause in fact of harm where the evidence indicates there is less than a probability, for example, a 50-50 possibility or a mere chance, that the harm would have occurred. (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312 (*Bowman*).)

The dangerous condition Herdegen alleged, which also formed the basis of the professional negligence allegation, was "that the intersection of Old Auburn Road and Allegretto and Monet Ways, and nearby areas, contained several features that exposed persons in the intersection to a substantial risk of injury. Vehicles stopped on Monet Way intending to turn left (north) onto Old Auburn Road lacked a sufficient corner sight distance for vehicles approaching from the south. [Citations.] With the 40 mile-per-hour speed limit at that portion of Old Auburn Road, the city's own design standards required a sight distance of 440 to the south of Monet Way. [Citations.] But visibility to the south is so obstructed by utility boxes that the design standards the state compels the city to meet required an all-way stop because of that dangerous condition alone."

Herdegen further argued: "The issue is not whether the inadequate sight distance on the corner of Monet was, in and of itself, a proximate cause of Ms. Herdegen's injury. Nor is the issue whether the lack of a stop sign on Old Auburn Road was, in and of itself, the proximate cause.

"The Herdegens maintain that the inadequate sight distance and the absence of a stop sign on Old Auburn Road are intertwined. *Together* they create a dangerous condition of the property."

10

The trial court found that, although Herdegen alleged a triable issue of fact as to a dangerous condition, the alleged condition was unconnected with Herdegen's injuries. Instead, the court found, Kumar failed to negotiate a curve in the road, drifting to the right and hitting Herdegen as she walked in an unmarked crosswalk. The court also noted that at the time of the accident, no vehicles were attempting to turn onto Old Auburn Road from Monet Way, the approach Herdegen alleged had inadequate sight distance.

Herdegen disputes the court's finding, arguing that there may be more than one legal cause of an accident and that a third party's culpability does not automatically absolve a governmental entity from liability if the misconduct was reasonably foreseeable. Herdegen also argues it is irrelevant that Kumar had "an unobstructed view of the intersection far enough from the south to give him time to stop before reaching it."

In essence, Herdegen is arguing that the corner of Monet Way and Old Auburn Road has a constricted sight distance exacerbated by the positioning of utility boxes. Therefore, there should be a stop sign on Old Auburn Road. Had there been a stop sign at the corner of Monet Way and Old Auburn Road, "when Kumar reached the intersection, he would have been legally required to stop and presumably would have done so."

As Herdegen notes, the issue of causation, like the existence of a dangerous condition, usually presents a question of fact. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148; *Lawson v. Safeway Inc.* (2010) 191 Cal.App.4th 400, 418.) However, issues of dangerous condition and causation may be resolved as a question of law if reasonable minds can come to but one conclusion. (*Salas*, *supra*, 198 Cal.App.4th at p. 1069; *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 442.) Here, the undisputed facts do not support the proposition that the alleged dangerous condition of the intersection proximately caused Herdegen's injuries.

11

In finding the alleged dangerous condition had "no causal connection to the third party conduct which in this case actually injured the plaintiff," the court cited *City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 30 (*San Diego*).)  Herdegen disagrees, contending *San Diego* does not stand for the proposition that there must be a causal connection between a dangerous condition of public property and third-party conduct that is the immediate cause of a plaintiff's injury.

In *San Diego*, an injured passenger and the surviving relatives of a passenger who died when the car in which they were riding was struck by participants in an illegal street race brought an action against both the racers and the city.  They alleged the city was liable for a dangerous condition, and the city brought a motion for summary judgment. (*San Diego*, *supra*, 137 Cal.App.4th at pp. 23-24.)  The trial court denied summary judgment (*id*. at p. 25) and the appellate court reversed (*id*. at pp. 30-32).

The court found:  "We cannot conclude the roadway was inherently defective at the time of this accident.  Despite the lack of lights,[2] there is no claim that if used by all drivers in the manner intended there is some inherent defect in the roadway where the accident took place.  It was undisputed the road is straight and level, and has few intersections and no sight line obstructions.  While it is true that the very safety and sense of security these features create encourage drivers—those involved in street racing and others—to exceed the speed limit, this does not establish a dangerous physical condition for purposes of section 835.  If it did, we would have to conclude every straight, level, unobstructed but unlighted freeway or road would be in an unsafe physical condition if drivers exceeded the speed limit, causing accidents." (*San Diego*, *supra*, 137 Cal.App.4th at pp. 30-31.)  In addition, the court found that "even if we were to conclude a defective physical condition exists for failure to install lighting, there is no

_____

[2]  The city conceded that the intersection where the accident took place was not well lighted.  (*San Diego*, *supra*, 137 Cal.App.4th at p. 27.)

12

evidence the racers were influenced by the absence of street lights." (*Id*. at p. 31.) The court, in considering the causation issue, referred to *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112 (*Zelig*): "*Zelig* instructs us the defect in the physical condition of the property must also have some causal relationship *to the third party conduct that actually injures the plaintiff.* [Citation.] . . . On this point we find instructive the *Zelig* court's final analysis of the facts before it. The court states: 'In the present case, the risk of injury was not increased or intensified by the condition of the property, and the necessary causal connection between the condition of the property and [the] crime was not present.' [Citations.]" (*Id*. at p. 30.)

Herdegen argues the court in *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749 found these statements from *Zelig* are dicta and unsupported by the cases cited. According to Herdegen, "In an action for dangerous condition of public property, when a third party's conduct is the immediate cause of plaintiff's injury, the rule is not that the dangerous condition must cause the third party's conduct. The correct rule is that the causal relationship must be between the condition and *plaintiff's injury*.

" '[O]nce a defendant's conduct is found to have been a cause in fact of the plaintiff's injuries, the conduct of a third party will not bar liability unless it operated as a superseding or supervening cause, so as to break the chain of legal causation between the defendant's conduct and the plaintiff's injuries.' [Citation]."

Herdegen contends: "The inadequate sight distance, speed of passing vehicles, and curvature of the intersection, along with the lack of a stop sign for north- and southbound traffic on Old Auburn Road, rendered the intersection at Monet and Allegretto dangerous. The dangerous condition created a foreseeable risk of the kind of harm Ms. Herdegen suffered. Gov. Code § 935. [*Sic*.] The risk arose from drivers speeding through the curved intersection at or faster than the 40 mile-per-hour limit. The dangerous condition was a cause of Ms. Herdegen's injuries, which were inflicted by just such a driver."

13

Subsequent to the briefing in the present case, the Supreme Court in *Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099 further clarified the law surrounding section 835. In *Cordova*, the court considered the question whether a government entity can be liable where it is alleged that a dangerous condition of public property existed and caused the injury the plaintiffs suffered in an accident, but did not cause the third party conduct that led to the accident.

The accident in question involved the negligent driving of a third party motorist that caused another car to strike a tree planted in the center median owned and maintained by the defendant city. The collision killed or injured all of the car's occupants. (*Cordova*, *supra*, 61 Cal.4th at p. 1102.) The court concluded that "plaintiffs in this case must show that a dangerous condition of property—that is, a condition that creates a substantial risk of injury to the public—proximately caused the fatal injuries their decedents suffered as a result of the collision with Shnayder's car. But nothing in the statute requires plaintiffs to show that the allegedly dangerous condition also caused the third party conduct that precipitated the accident." (*Id.* at p. 1106.) In so finding, the court considered both *Zelig* and *San Diego*, noting neither case holds that plaintiffs in section 835 cases involving harmful third party conduct must demonstrate that a dangerous condition of property caused the harmful conduct. (*Cordova*, at pp. 1107-1110.)

After considering *Cordova*, we find several major problems with Herdegen's analysis of the undisputed facts. First, the alleged inadequate sight distance impacts drivers turning from Monet Way onto Old Auburn Road. No such driver is involved in the present case. Second, there is absolutely no causal connection between the purported defect and Herdegen's injuries. "In reviewing evidence of causation, 'we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the

14

defendant.' [Citation.] We cannot, however, draw inferences 'from thin air.' [Citation.] As one court has explained, 'Where . . . the plaintiff seeks to prove an essential element of [his] case by circumstantial evidence, [he] cannot recover merely by showing that the inferences [he] draws from those circumstances are consistent with [his] theory. Instead, [he] must show that the inferences favorable to [him] are more reasonable or probable than those against [him].' [Citation.]" (*Bowman*, *supra*, 186 Cal.App.4th at p. 312; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775.)

Here, Kumar struck Herdegen when he negligently drifted to the right; the corner sight line played absolutely no role in Kumar's failure to correctly steer his vehicle. Instead of presenting evidence that there was a connection between the alleged defect and her injuries, Herdegen speculates that if a stop sign had been installed Kumar would have stopped and not have hit her. Such speculation cannot constitute proximate causation, as the trial court properly found.

## DISPOSITION

The judgment is affirmed. Roseville, Morton & Pitalo, and Southfork shall recover costs on appeal.

                                    RAYE , P. J.

We concur:

BUTZ , J.

RENNER , J.

15