Filed 8/13/15

# IN THE SUPREME COURT OF CALIFORNIA

ANTONIO CORDOVA et al., )
)
    Plaintiffs and Appellants, )
) S208130
    v. )
) Ct.App. 2/1 B236195
CITY OF LOS ANGELES, )
) Los Angeles County
    Defendant and Respondent. ) Super. Ct. No. BC442048
)
_____)

Under section 835 of the Government Code,[1] a public entity may be held liable for injury proximately caused by a dangerous condition of its property if the risk of injury was reasonably foreseeable and the entity had sufficient notice of the danger to take corrective measures.

In this case, the negligent driving of a third party motorist caused another car to strike a tree planted on a center median owned and maintained by the City of Los Angeles. The collision with the tree killed or injured all of the car's occupants. Plaintiffs Antonio and Janis Cordova sued the city under section 835, alleging that the configuration of the roadway was a dangerous condition of public property. The question we confront is whether section 835 requires plaintiffs to show that this allegedly dangerous condition caused not only their decedents' fatal

_____

[1] Unless otherwise stated, all statutory citations are to the Government Code.

1

injuries, but also the third party conduct that precipitated the accident. We conclude that section 835 does not require plaintiffs to make such a showing.

## I.

This case arises from a fatal traffic accident in Eagle Rock, a neighborhood in the City of Los Angeles.[2] Cristyn Cordova was driving her 2006 Nissan Maxima westbound in the inside lane of Colorado Boulevard, with four passengers in the car: Cristyn's sister Toni, her brother Andrew, her friend Jason Gomez, and her boyfriend Carlos Campos. As they approached Highland View Avenue, a vehicle driven by Rostislav Shnayder veered into the side of Cristyn's car. Although the speed of the two cars at the time of the collision is in dispute, it is undisputed that both cars were traveling well above the posted speed limit of 35 miles per hour.

The impact from the collision forced the Nissan Maxima over the curb and onto the grassy center median of Colorado Boulevard. Out of control and spinning counterclockwise, the car struck one of several large magnolia trees planted in the median, approximately seven feet from the inside lane of the roadway. Although the car's occupants were wearing seat belts, Cristyn, Toni, Andrew, and Jason Gomez were killed, and Carlos Campos was badly hurt. Shnayder was arrested at the scene. A jury later convicted him of four counts of vehicular manslaughter without gross negligence. (Pen. Code, § 192, subd. (c)(2).)

Plaintiffs Antonio and Janis Cordova — the parents of Cristyn, Toni, and Andrew — filed a wrongful death action against the City of Los Angeles (the City) among other defendants. As to the City, plaintiffs alleged that Colorado Boulevard was in a dangerous condition because the magnolia trees on the grassy median were

_____

[2] The facts are taken from the parties' statement of undisputed facts in the trial court.

2

too close to the travel portion of the roadway, posing an unreasonable risk to motorists who might lose control of their vehicles. Plaintiffs claimed that this dangerous condition proximately caused their decedents' fatal injuries.

The City moved for summary judgment, asserting that the undisputed facts showed that the street and median were not dangerous and that the accident was caused by third party conduct, not by any feature of public property. In response, plaintiffs submitted declarations from a number of experts who opined that the proximity of the magnolia trees to the travel portion of the roadway presented a significant and foreseeable danger to the public. Plaintiffs also submitted summaries of 142 traffic accidents on Colorado Boulevard between January 1998 and April 2009, as well as two publications by the American Association of State Highway and Transportation Officials (AASHTO) discussing the "clear zone" concept of roadside safety.

The City objected on numerous grounds to the declarations from plaintiffs' experts, the accident summaries, and the AASHTO publications. The City further argued that it was entitled to summary judgment because its liability hinged "on whether an aspect of public property somehow *caused, facilitated, or encouraged* the third party conduct" of motorist Shnayder. Because there was "no evidence that . . . Shnayder or any other motorists were influenced to engage in criminally negligent driving . . . because of the presence of tree(s) in the center median island(s)," the City argued that plaintiffs had raised no triable issue under section 835. The trial court sustained the City's evidentiary objections to plaintiffs' experts' conclusions that the magnolia tree was a dangerous condition of public property, as well as to the accident summaries and the AASHTO publications. It then entered summary judgment in favor of the City, ruling that the magnolia tree "does not constitute a dangerous condition of public property" because, among other things, it "did not cause the accident that killed the Cordova children."

The Court of Appeal affirmed. It declined to address plaintiffs' objections to the trial court's evidentiary rulings, concluding that the City was entitled to summary judgment in any event because "the magnolia tree . . . did not constitute a dangerous condition of public property as a matter of law." The court reasoned that, "even assuming plaintiffs' evidence was wrongly excluded, they cannot show that the magnolia tree contributed to Shnayder's criminally negligent driving." The court also explained that the configuration of the roadway was not a dangerous condition because "[t]here is nothing about Colorado Boulevard that would cause a person driving at or near the speed limit to suddenly veer into the magnolia trees. Plaintiffs do not contend the view of the median was in any way obscured such that the tree was a surprise obstacle in the roadway, or that the median and trees caused cars to travel at unsafe speed . . . such that persons using the roadway with due care would be hit by such vehicles."

We granted plaintiffs' petition for review, limited to the following question: "May a government entity be liable where it is alleged that a dangerous condition of public property existed and caused the injury plaintiffs suffered in an accident, but did not cause the third party conduct that led to the accident?" We now reverse.

## II.

The Government Claims Act (§ 810 et seq.; the Act) "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 145, italics and fn. omitted.) Section 835, the provision of the Act at issue in this case, prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property. (See *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) Section 835 provides that a public entity may be held liable for such injuries "if the plaintiff establishes that

4

the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." In addition, the plaintiff must establish that either: (a) "[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition," or (b) "[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (*Ibid*.)

The Act defines a " '[d]angerous condition' " as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830.) Public property is in a dangerous condition within the meaning of section 835 if it "is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself." (*Bonnano v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148.) A condition is not dangerous "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.)

A public entity is not, without more, liable under section 835 for the harmful conduct of third parties on its property. (*Hayes v. State of California* (1974) 11 Cal.3d 469, 472.) But if a condition of public property "creates a substantial risk of injury even when the property is used with due care" (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 718 (*Ducey*)), a public entity "gains no

5

immunity from liability simply because, in a particular case, the dangerous condition of its property combines with a third party's negligent conduct to inflict injury." (*Id.* at pp. 718-719.)

**III.**

The Court of Appeal in this case held that the magnolia tree planted in the center median is not a dangerous condition as a matter of law because it neither caused Shnayder's negligent driving in this particular case nor tended to cause motorists to drive negligently in general. We note at the outset that this reasoning conflates distinct elements of the section 835 cause of action. Under section 835, whether a dangerous condition exists — that is, whether a condition of public property "creates a substantial . . . risk of injury when used with due care in a manner in which it is reasonably foreseeable that it will be used" (§ 830, subd. (a)) — is a separate question from whether "the injury was proximately caused by the dangerous condition" (§ 835). A condition of public property may constitute a "dangerous condition" even though it does not proximately cause injury in a particular case. Conversely, a condition of public property may proximately cause injury in a particular case even though it is not a "dangerous condition" within the meaning of the statute.

The Court of Appeal's decision rests, at bottom, on a particular view of the kind of causation necessary to establish section 835 liability. In the court's view, a public entity cannot be held liable for a property defect that "combines with a third party's negligent conduct to inflict injury" (*Ducey*, *supra*, 25 Cal.3d at p. 719), unless the plaintiff can show that the defect caused the third party negligence. On that view, it is not enough for plaintiffs in this case to establish that a dangerous condition of property contributed to the injuries their decedents sustained as a result of the car accident; plaintiffs must establish that the condition caused the third party negligence that precipitated the accident.

6

We disagree.  Section 835 requires a plaintiff to show that the public entity's property was "in a dangerous condition at the time of the injury" and that "the *injury* was proximately caused by the dangerous condition."  (§ 835, italics added.)  The statutory definition of " '[d]angerous condition' " similarly asks whether a condition of property "creates a substantial . . . risk of *injury*."  (§ 830, italics added.)  Thus, plaintiffs in this case must show that a dangerous condition of property — that is, a condition that creates a substantial risk of injury to the public — proximately caused the fatal injuries their decedents suffered as a result of the collision with Shnayder's car.  But nothing in the statute requires plaintiffs to show that the allegedly dangerous condition also caused the third party conduct that precipitated the accident.

Our decision in *Ducey* confirms that section 835 imposes no such requirement.  In *Ducey*, this court held that the state could be held liable under section 835 for failing to provide a median barrier on a freeway, where the absence of a barrier contributed to injuries the plaintiffs suffered when a third party driver crossed the median and collided with their vehicle.  This court expressly rejected the state's argument that it could not be held liable because the conduct of the other driver, rather than the lack of a median barrier, was "the precipitating cause of the accident," explaining that nothing in section 835 imposes such a limitation on a public entity's liability.  (*Ducey*, *supra*, 25 Cal.3d at p. 715.)  Thus, citing evidence that the absence of a barrier created a substantial risk of injury even when the freeway was used with due care, without the negligence of any party — for example, "when accidents result . . . from mechanical failure, sudden illness, or animals in the road" — this court upheld a jury's finding that the state was liable for the plaintiffs' injuries resulting from the cross-median collision.  (*Id.* at pp. 718-720.)

7

Consistent with the text of section 835 and with our holding in *Ducey*, Courts of Appeal have recognized that plaintiffs injured by a combination of a dangerous condition of property and third party conduct need show only that the condition proximately caused their injury; they need not show that the condition somehow caused the third party's harmful conduct. In *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, for example, a driver on a Sacramento street swerved to avoid another vehicle and hit a concrete divider that separated the eastbound and westbound lanes, injuring both the driver and his passenger. They sued the City of Sacramento, claiming the divider was a dangerous condition that contributed to their injuries. Sacramento successfully moved for summary judgment, arguing that the divider did not cause the plaintiffs' injuries because it did not cause the driver to swerve. The Court of Appeal reversed. It explained that Sacramento's argument "misapprehends the nature of the required causal connection" because "the pertinent question is not whether the divider caused [the driver] to swerve . . . ; rather the pertinent question is whether plaintiffs' 'injury was proximately caused by the dangerous condition.' (§ 835.)" (*Lane*, *supra*, 183 Cal.App.4th at p. 1348.)

Similarly, in *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, the plaintiff was standing next to her car, which was parked on a gravel strip at the side of the road, when she was hit by an intoxicated driver who had veered onto the gravel strip to bypass stalled traffic on the street. She sued the Town of Los Gatos, arguing that the configuration of the street and the adjacent gravel strip was a dangerous condition because it induced motorists both to park on the gravel strip and to drive on the gravel strip to bypass traffic. The trial court granted Los Gatos's motion for summary judgment, ruling that the plaintiff had not presented evidence demonstrating that any physical defect on the property " 'caused or contributed to the third party conduct that injured' " the plaintiff. (*Id.* at p. 756.)

8

The Court of Appeal reversed, rejecting the notion "that in every case of intervening third party conduct, whether deliberate or not, a public entity is excused from liability for a dangerous condition of its property unless the plaintiff shows that the dangerous condition caused the third party's conduct." (*Id.* at p. 773.)

In reaching a contrary conclusion in this case, the Court of Appeal relied primarily on our decision in *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112 (*Zelig*). In *Zelig*, a woman was fatally shot by her former husband inside a Los Angeles courthouse. The guardians of her children sued Los Angeles County, asserting, as relevant here, that the county maintained the courthouse in a dangerous condition by failing to install a variety of safety devices to prevent such shootings. This court concluded that the claim was properly dismissed. The court explained that although a public entity may be held liable for injury caused by the criminal activity of third parties if it has maintained its property in a manner that creates a foreseeable risk of criminal conduct, "the defect in the physical condition of the property must have some *causal relationship* to the third party conduct that actually injures the plaintiff." (*Zelig*, *supra*, 27 Cal.4th at p. 1136.) The Court of Appeal below relied on that statement in concluding that here, too, plaintiffs must show that the physical condition of the property had some causal relationship to the third party conduct that precipitated the car accident.

The Court of Appeal's reliance on *Zelig* was misplaced. *Zelig* did not purport to establish a new rule that requires a plaintiff in all section 835 cases involving harmful third party conduct to demonstrate that a dangerous condition of property caused the harmful conduct. As *Zelig* elsewhere acknowledged, the general rule is that "liability is imposed . . . when there is some defect in the property itself and a causal connection is established between the defect and the *injury*." (*Zelig*, *supra*, 27 Cal.4th at p. 1135, italics added.) *Zelig*'s focus on the

9

causal relationship between the condition of the courthouse and third party conduct simply reflected the nature of the plaintiffs' allegations in that case: Their theory was that the physical condition of the courthouse had facilitated the shooter's efforts to harm his ex-wife, resulting in her fatal injuries. Plaintiffs in this case, by contrast, do not allege that the magnolia tree facilitated or otherwise contributed to Shnayder's negligent driving, but that the dangerous location of the magnolia tree on the median tragically increased the injury their decedents suffered as a result of their collision with Shnayder's vehicle. *Zelig* neither holds nor suggests that plaintiffs in such circumstances must prove that a dangerous condition of property not only contributed to their injuries, but also contributed to the third party conduct that precipitated the accident.

The Court of Appeal in this case also relied for its rule on *City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21 (*City of San Diego*). That reliance, too, was misplaced. In *City of San Diego*, two cars were engaged in an illegal street race at dusk along Imperial Avenue in San Diego when one of the cars broadsided a third car as its driver, a nonparticipant in the race, tried to make a left turn onto a side street. The driver of the third car and a passenger in that car were killed, and a second passenger was seriously injured. The injured passenger and relatives of the deceased driver and passenger sued the City of San Diego, alleging that Imperial Avenue was dangerous for motorists turning left onto side streets because it was often used for street racing and was poorly lit. After the trial court denied San Diego's motion for summary judgment, San Diego filed a petition for writ of mandate in the Court of Appeal.

The Court of Appeal issued a writ of mandate directing the trial court to grant the summary judgment motion, concluding that Imperial Avenue was not dangerous and that the plaintiffs had presented "no evidence connecting the absence of lighting to the third party conduct." (*City of San Diego*, *supra*, 137

10

Cal.App.4th at p. 31.) The Court of Appeal questioned whether the absence of lighting was a "defective physical condition" of the property, noting that the plaintiffs had made no "showing of previous accidents caused by poor lighting." (*Ibid.*) The court also explained that "it is not possible to say how much, if any, lighting is necessary to protect all drivers from speeding vehicles," and that the court was unable to "discern how much lighting of the roadway at dusk would have improved [the] ability [of the driver turning left] to see the oncoming racers." (*Ibid.*) Finally, the Court of Appeal briefly noted the lack of evidence that "the racers were influenced by the absence of street lights." (*Ibid.*) But *City of San Diego* contains no suggestion that, to recover in an action against a public entity under section 835 when the plaintiff's injuries are caused in part by the negligent driving of a third party, the plaintiff is always required to show that the allegedly dangerous condition on the public entity's property caused the third party's conduct.

The City argues that two other Court of Appeal decisions — *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, and *Constance B. v. State of California* (1986) 178 Cal.App.3d 200 — support its argument that "there must be something dangerous about the public property that caused the third party conduct to occur." In both cases, however, as in *Zelig*, the plaintiff asserted that a dangerous condition of property caused or facilitated the third party conduct that injured the plaintiff. In *Sun*, the Court of Appeal rejected the plaintiff's contention because it found no credible evidence that the condition in question was dangerous (*Sun*, *supra*, at pp. 1187-1192); in *Constance B.*, the Court of Appeal held that the allegedly dangerous condition did not proximately cause the plaintiff's injury (*Constance B.*, *supra*, at pp. 210-212). Neither *Sun* nor *Constance B.* holds that, to recover from a public entity under section 835, a plaintiff injured by the combined effects of third party conduct and a dangerous condition must always show that the

11

condition somehow contributed to the third party conduct, regardless of the plaintiff's theory of liability.

## IV.

The City, joined by amicus curiae League of California Cities and California State Association of Counties, argues in the alternative that plaintiffs' section 835 claim fails because the magnolia tree did not cause the initial injuries suffered by the Cordovas when their car was sideswiped by Shnayder, but rather exacerbated injuries the Cordovas had already sustained. The City notes the Law Revision Commission, on whose recommendations the Government Claims Act was based, had explained in its report and recommendation that "[t]he condition of the property involved should create a 'substantial risk' of injury, for an undue burden would be placed upon public entities if they were responsible for the repair of all conditions creating any possibility of injury, however remote that possibility might be." (Recommendation Relating to Sovereign Immunity, No. 1 — Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 822.) It further notes that Professor Van Alstyne, who served as research consultant to the Law Revision Commission when it drafted the report that led to the Legislature's enactment of the Act, referred to this passage in opining that "[t]he Legislature was apparently concerned not with the extent of the injury, but with the probability that an injury would occur." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1st ed. 1980) p. 191.) From this, the City surmises that section 835 imposes liability for conditions of property that increase the risk of third party conduct causing an accident, but not conditions that increase the severity — or extent — of any resulting injury.

The commentary the City cites, however, does not speak to the causation question presented in this case. It instead seeks to clarify the meaning of the statutory definition of " '[d]angerous condition' " under section 830. The

12

commentary makes plain that the definition's "substantial . . . risk of injury" requirement (*ibid.*) means that a condition is dangerous when the risk that an injury will result from the condition is substantial; a condition that creates only a remote possibility of injury is not dangerous even if the extent of injury that may occur is substantial. The commentary does not, however, suggest that a public entity is categorically immune from liability for conditions of property that substantially increase the extent of a plaintiff's injuries from an accident caused by a third party. Nor do we see any statutory basis for creating such an immunity. As previously noted, section 835 states that a public entity may be held liable "if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." The statute draws no distinction between the initial injuries a plaintiff may have suffered in an accident and injuries that may have been exacerbated by a dangerous condition of public property. If plaintiffs here can show that the magnolia tree constituted a dangerous condition that proximately caused their children to suffer fatal injuries, and if they can show that the tree created a reasonably foreseeable risk of that kind of injury, nothing in section 835 forbids imposition of liability merely because Shnayder may have caused plaintiffs' decedents to suffer other injuries moments before the fatal injuries occurred.

## V.

We thus conclude that the Court of Appeal erred in this case when it upheld the grant of summary judgment in favor of the City on the ground that the magnolia tree was not a dangerous condition because the tree did not cause the negligent driving of a third party. Our conclusion does not mean, as the City fears, that a public entity may be held liable whenever a plaintiff is injured after a third party's conduct causes the plaintiff's vehicle to strike a hard, fixed object on public

13

property close to a road, such as a light post, a telephone pole, a traffic light, a stop sign, or a bridge abutment. "A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable." (§ 835.4, subd. (a).) Moreover, even when a public entity *unreasonably* decides to place a hard, fixed object on public property, the object is not a "dangerous condition" with the meaning of section 835 if it does not create a substantial risk that motorists driving in a reasonable manner will be injured by striking it. (§ 830.2.) Finally, the public entity is immune from liability if placement of the object was part of a plan or design for which the entity reasonably gave its discretionary approval. (§ 830.6; see *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63.)

Nor does our conclusion bring this particular case to an end. On remand, the Court of Appeal must decide whether plaintiffs presented sufficient evidence to create a triable issue as to whether the configuration of the roadway was in fact a dangerous condition. That is, the court must determine whether, based on the evidence presented, a jury could reasonably conclude that the configuration of the roadway created a substantial risk of injury when the roadway was used with due care in a manner in which it was reasonably foreseeable that it would be used. (§ 830.) The court must also decide whether plaintiffs presented sufficient evidence that the configuration of the roadway was a proximate cause of the fatal injuries suffered by their decedents.

We express no view with respect to these questions. Nor do we express any view with respect to the evidentiary rulings made by the trial court when it granted the City's summary judgment motion. Today we hold only that, contrary to the Court of Appeal's apparent premise, a governmental entity is not categorically immune from liability where it is alleged that a dangerous condition

14

of property caused the injury that the plaintiffs suffered in an accident, but did not cause the third party conduct that precipitated the accident.

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded for further proceedings consistent with this opinion.


                                                    **KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Cordova v. City of Los Angeles

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 212 Cal.App.4th 243
**Rehearing Granted**

_____

**Opinion No.** S208130
**Date Filed:** August 13, 2015

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William F. Fahey

_____

**Counsel:**

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi|Keese and John A. Girardi for Plaintiffs and Appellants.

Carmen A. Trutanich and Michael N. Feuer, City Attorneys, Amy Jo Field, Blithe Smith Bock and Sara Ugaz, Deputy City Attorneys, for Defendant and Respondent.

Greines, Martin, Stein & Richland, Timothy T. Coates and Kent J. Bullard for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza and Matthew S. Levinson for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Martin N. Buchanan
Law Offices of Martin N. Buchanan
655 West Broadway, Suite 1700
San Diego, CA  92101
(619) 238-2426

Sara Ugaz
Deputy City Attorney
200 North Main Street, Room 916
Los Angeles, CA  90012-4130
(213) 473-6878

Timothy T. Coates
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90036-3697
(310) 859-7811