Filed 2/10/16  Cordova v. City of Los Angeles CA2/1
Opinion on remand

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTONIO CORDOVA et al., | B236195 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. Nos. BC442048, BC444004, BC443948) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi/Keese and John A. Girardi for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, James P. Clark, Chief Deputy City Attorney, Thomas H. Peters, Chief Assistant City Attorney, Ronald S. Whitaker, Managing Assistant City Attorney, Blithe Smith Bock and Sara Ugaz, Deputy City Attorneys, for Defendant and Respondent.

_____

For the second time, we consider this appeal from the trial court's grant of the City of Los Angeles's (City) motion for summary judgment in Antonio and Janis Cordova's (Cordovas) wrongful death action alleging certain City property, a magnolia tree, created a dangerous condition and caused the deaths of their children. A public entity is liable for injuries caused by public property only if the plaintiff satisfies the elements set forth in Government Code sections 830 and 835.[1] In granting summary judgment for the City, the trial court held the Cordovas had not shown a triable issue of material fact on two independent legal elements: (1) whether the magnolia tree created a dangerous condition as defined by the governing statute; and (2) whether the allegedly dangerous condition caused the deaths of the Cordovas' children. In the previous appeal, this court affirmed summary judgment on the issue of causation and did not reach the issue of whether the magnolia tree created a dangerous condition of public property. The California Supreme Court reversed, clarifying that causation under section 835 does not require a showing that the allegedly dangerous condition caused certain third party conduct. Instead, section 835 requires only that the dangerous condition proximately caused the injuries sustained. The Supreme Court remanded the matter to this court with instructions that we determine whether the Cordovas presented sufficient evidence to create a triable issue on either causation or whether the magnolia tree created a dangerous condition. Considering the element of whether the public property at issue is in a dangerous condition, we hold that the Cordovas have not shown a triable issue of material fact and therefore we affirm the trial court's grant of summary judgment.

**BACKGROUND**

I.     **Governing statutory provisions**

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

The Government Claims Act comprehensively defines "the liabilities and immunities of public entities and public employees for torts." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 145, italics omitted.) The Act does "not . . . expand the rights of plaintiffs in suits against governmental entities, but . . . confine[s] potential governmental liability to rigidly delineated circumstances." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129.)

Sections 830 and 835, the provisions at issue in this case, delimit when a public entity may be liable for injuries caused by a dangerous condition of public property. (See *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) Section 835 provides that a public entity may be held liable for such injuries if the plaintiff establishes that "the property was in a dangerous condition at the time of the injury," that "the injury was proximately caused by the dangerous condition," and that "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." In addition, section 835 provides that the plaintiff must establish that either a "negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition" or the "public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." Section 830 further defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

## II.     Facts of the case

The tragic events in this case occurred on a segment of Colorado Boulevard in Eagle Rock, a neighborhood in northeast Los Angeles. The pertinent section of Colorado Boulevard runs through a quasi-residential mixed-use area and has three lanes of traffic in both directions. A grassy center median with several large magnolia trees divides the opposing lanes of traffic. The posted speed limit is only 35 miles per hour.

A little before 10:30 p.m. on August 27, 2008, Cristyn Cordova (Cristyn), daughter of the Cordovas, drove her 2006 Nissan Maxima with four passengers in the

3

number one lane, the lane closest to the median, westbound on Colorado Boulevard, approaching Hermosa Avenue. Cristyn's four passengers were her sister Toni-Marie, her brother Andrew, her boyfriend Carlos Campos, and her friend Jason Gomez.

Next to Cristyn's vehicle, Rostislav Shnayder (Shnayder) drove his 2004 Mitsubishi Eclipse in the same direction. The City's accident reconstruction expert estimated Shnayder's speed at 66 miles per hour, almost twice as fast as the posted speed limit. Further, the expert calculated Cristyn's speed at 68 miles per hour.

The cars collided when Shnayder veered into Cristyn's car. Immediately, Shnayder's car moved right, and Cristyn's car moved left. Her car spun out of control, over the median curb, onto the median, and into a magnolia tree seven feet from the inner edge of the number one lane of traffic. Cristyn and three of her four passengers (Toni-Marie, Andrew Cordova, and Jason Gomez) died; the fourth passenger sustained serious injuries.

A jury later convicted Shnayder of vehicular manslaughter with ordinary negligence.

## III.    Procedural history

The Cordovas filed this wrongful death action against the City. They alleged that the magnolia tree created a "dangerous condition," as defined in sections 830 and 835, because it stood "too close to the travel portion of the roadway" thus causing the deaths of their children.

The City moved for summary judgment and objected to the evidence proffered by the Cordovas in opposition to the City's motion. Sustaining many of the City's evidentiary objections, the trial court entered summary judgment in favor of the City on all grounds.

Specifically, the City's summary judgment motion asserted the absence of a triable issue of fact on two independent legal elements: (1) whether the magnolia tree created a dangerous condition as defined by the governing statute; and (2) whether the allegedly dangerous condition caused the deaths of the Cordovas' children. As to whether the magnolia tree created a dangerous condition, the trial court concluded that it did not, for

4

two reasons. First, while the roadway was safe when used in a reasonably foreseeable manner, Cristyn and Shnayder had not used it in a reasonably foreseeable manner. Second, before the accident, the tree itself was not damaged, deteriorated, defective, or latently hazardous in any way. As to causation, the trial court held the third party conduct of Shnayder, not the magnolia tree, caused the injuries sustained by the Cordovas' children.

On appeal, the Cordovas asserted two errors by the trial court. As to its determination that no dangerous condition existed, the trial court abused its discretion in excluding the evidence proffered by the Cordovas. If that evidence had been admitted, there would have been a triable issue of fact on the dangerous condition element. Second, as to causation, the trial court erred in requiring the Cordovas to show the magnolia tree caused *the third party conduct* of Shnayder. Instead, the Cordovas only needed to show the magnolia tree caused *the injuries*.

In our prior opinion, we affirmed summary judgment on the issue of causation because we construed the statute as requiring a showing that the allegedly dangerous condition caused the third party conduct and there was no triable issue of material fact on that point. We did not reach the issue of whether the magnolia tree actually constituted a dangerous condition as defined by the statute, because even if it did the plaintiffs would still need to show that the allegedly dangerous condition, the magnolia tree, caused the third party conduct.

The California Supreme Court reversed, holding that causation under section 835 does not require a showing that the allegedly dangerous condition caused *the third party conduct*. Instead, section 835 only requires that the dangerous condition proximately caused *the injuries*. (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1102–1103, 1106, 1111.) The Supreme Court did not reach the issue of whether the magnolia tree created a dangerous condition. (*Id.* at pp. 1111–1112.) The Court remanded the matter to this court with instructions that we determine whether the Cordovas presented sufficient evidence to create a triable issue on either the element of causation or the element of whether the magnolia tree created a dangerous condition. (*Id.* at p. 1111.)

5

We affirm the trial court's grant of summary judgment on the ground that there was no triable issue of fact regarding whether the public property at issue is a dangerous condition pursuant to sections 830 and 835. Further, our analysis of the dangerous condition element confirms that the trial court did not abuse its discretion in excluding the documentary evidence and expert opinions proffered by the Cordovas.

## I.     The trial court erred in granting summary judgment on causation.

The City's summary judgment motion on the causation element relied entirely on the legal principle that the Cordovas must show the dangerous condition caused the third party conduct or negligence, not merely that the dangerous condition caused the injuries sustained. The California Supreme Court rejected that legal principle, invalidating the sole pillar of the City's contention that there was no triable issue as to causation. (See *Cordova v. City of Los Angeles*, *supra*, 61 Cal.4th at pp. 1102–1103, 1106, 1111.)

As explained by the Supreme Court, "plaintiffs in this case must show that a dangerous condition of property—that is, a condition that creates a substantial risk of injury to the public—proximately caused the fatal injuries their decedents suffered as a result of the collision with Shnayder's car. But nothing in the statute requires plaintiffs to show that the allegedly dangerous condition also caused the third party conduct that precipitated the accident." (*Cordova v. City of Los Angeles*, *supra*, 61 Cal.4th at p. 1106.)

The Supreme Court relied on the text of the statute as well as its prior opinion in *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707. Sections 830 and 835 merely require that "'the *injury* was proximately caused by the dangerous condition'" and that the dangerous condition of property "'creates a substantial . . . risk of *injury*.'" (*Cordova v. City of Los Angeles*, *supra*, 61 Cal.4th at p. 1106.) In *Ducey*, a third party's vehicle crossed a median and collided with the plaintiffs' vehicle. The state defendant argued it could not be liable when "'the precipitating cause'" of the accident is a third party driver rather than the alleged dangerous condition of property, the absence of a median barrier. (*Id.* at pp. 1106–1107.) The Supreme Court rejected that argument because the absence of a median

barrier could be a dangerous condition *even without the negligence of a third party*. (*Id.* at p. 1107.)

For the reasons elucidated in the Supreme Court's decision, the trial court erred in granting summary judgment on causation. Thus, we proceed to analyze the alternative ground on which the trial court granted the City's summary judgment motion.

**II.  Because the trial court did not abuse its discretion in excluding the evidence proffered by the Cordovas, the trial court correctly granted summary judgment on the dangerous condition element.**

The Cordovas' appeal of summary judgment on the dangerous condition element contends that the trial court abused its discretion in excluding six pieces of evidence, which they proffered in opposition to the City's summary judgment motion. The Cordovas impliedly concede that without the disputed evidence, there is no triable issue of fact on whether the magnolia tree created a dangerous condition. As explained below, we hold the trial court did not abuse its discretion and instead properly fulfilled its role as gatekeeper of expert opinion testimony and evidence.

"Under California law, trial courts have a substantial 'gatekeeping' responsibility." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 769 (*Sargon*) [relying on Evid. Code, §§ 801 and 802].) Trial courts act as gatekeepers to exclude expert opinion that is either speculative or not relevant. (*Id.* at p. 770.) An expert's opinion cannot be based on speculation, conjecture, guess, surmise, or assumptions of fact without evidentiary support. (*Ibid.*) Further, trial courts may inquire into whether the expert opinion relies on material that actually supports the expert's reasoning. (*Id.* at p. 771.) "'A court may conclude that there is simply too great an analytical gap between the data and the opinion offered.'" (*Ibid.*) Trial courts may also exclude expert opinion that is not sufficiently beyond common experience and thus would not assist the trier of fact. (*Id.* at p. 769.) The trial court only abuses its discretion when its evidentiary ruling is "'so irrational and arbitrary that no reasonable person could agree with it.'" (*Id.* at p. 773.)

7

To determine whether the evidence at issue is relevant, we look to the legal standard that the Cordovas must prove. As defined by statute, a property is in a dangerous condition when it "creates a substantial . . . risk of injury when such property . . . is used with due care in a manner [that] is reasonably foreseeable." (§ 830.) In other words, did *the location of the magnolia tree, specifically its distance from the roadway,* create a substantial risk of injury when the boulevard is used with due care in a manner that is reasonably foreseeable? Having set the proper framework for our analysis, we now review each of the trial court's rulings excluding the evidence proffered by the Cordovas.

### A.      *1967 Highway Design and Operational Practices Related to Highway Safety*

The trial court properly excluded the American Association of State Highway Officials (AASHO)'s 1967 Highway Design and Operational Practices Related to Highway Safety (AASHO 1967 Report or "the report"). This report applies to controlled-access high-speed highways, as its title and the content indicate. A controlled-access high-speed highway refers to the typical freeway with unhindered flow of traffic: no traffic signals, intersections, property access, or pedestrians. AASHO created the report in response to the Federal Highway Administrator's proposal for "a special study of the traffic and safety characteristics of the Interstate System and other highways." The majority of the 71-page text discusses such controlled-access high-speed highways providing, for example, recommendations on entrance and exit ramps for highways. Many images in the report display controlled-access high-speed highways.

Further, the AASHO 1967 Report expressly excludes "conventional roads and streets" from its discussion, that is, non-controlled-access low-speed urban streets. In a short, separate section titled "Roadside Hazards on Conventional Roads and Streets," the report highlights the difference between the two roadway types and the problems in applying its recommendations to the latter: "The Committee gave much consideration to the problem of reducing roadside hazards on non-controlled access primary highways. Recognizing the narrow right-of-way and existence of many utility poles, trees, and walls

8

on both public and private property, it may well be that roadside obstructions on these roads constitute a problem altogether different from that of higher type roads."

The collision that is the subject of this appeal did not occur on a controlled-access high-speed highway. It occurred on a non-controlled-access low-speed urban street, that is, an area with lower speed limits and more pedestrians, businesses, intersections, and traffic signals. As mentioned previously, the neighborhood is a quasi-residential mixed-use area, with businesses on Colorado Boulevard and residences directly behind them. The speed limit is 35 miles per hour in this segment of Colorado Boulevard. Thus, the report on controlled-access high-speed highways is not relevant to this case. The trial court did not abuse its discretion in excluding this report.

### B. *1996 Roadside Design Guide*

The American Association of State Highway and Transportation Officials (AASHTO)'s 1996 Roadside Design Guide (AASHTO 1996 Guide or "the guide") presents a closer question on relevance. Unlike the AASHO 1967 Report, the AASHTO 1996 Guide contains extensive discussion of non-controlled-access low-speed urban streets. The guide dedicates a chapter to "Roadside Safety in Urban And/Or Restricted Environments." The chapter opens by explaining, "Generally, the principals [principles] and guidelines for roadside design presented in all of the previous chapters of this Guide discuss many roadside safety considerations for rural highways, where vehicle speeds are on the high side (that is, approaching 80 km/h [or 50 miles per hour], and greater) and the highway is operating under free-flow conditions. This chapter is intended to present the designer with considerations to help enhance safety in urban and urban-like areas and restricted or special situations." The guide further defines urban areas as areas with "lower speeds; dense abutting development; limited right-of-way; [and] closely spaced intersections and access to properties." According to the guide, restricted or special situations include streets with "limited right-of-way, where pedestrians are present in close proximity to the street, [or] the presence of . . . playgrounds or schools."

Nevertheless, the trial court did not abuse its discretion in excluding the guide. The guide merely contains recommendations, not mandatory or legally binding safety

9

standards.  The Preface includes the following disclaimer:  "A second noteworthy point is that this document is a guide.  It is not a standard or a design policy.  It is intended for use as a resource document from which individual highway agencies can develop standards and policies."  The guide uses only discretionary language when discussing urban streets: "The clear roadside concept is still the goal of the designer; however, this is often not attainable and compromises may be necessary. . . .  [¶] . . . [¶] . . . Since the conditions and concerns may vary greatly from site to site, using standard approaches may not be the most effective process.  Designers should consider many alternatives to achieve a safe and balanced design."  The City had no legal obligation to follow the suggestions in the guide.  The dangerous condition statute alone defines the City's liability and the applicable legal standard, which is whether the condition of the property creates a substantial risk of injury when the public uses it with due care.  The guide, however, does not explain whether the magnolia tree in this case created a substantial risk of injury; instead, it is merely a third party's recommendation on the optimal conditions when placing fixed objects next to urban streets generally.  Because the guide has minimal relevance to the controlling legal standard, the trial court acted within its discretion in excluding it.

### C.     *Declaration of Harry J. Krueper, Jr.*

The Cordovas offered the declaration of Harry J. Krueper, Jr. (Krueper), a civil engineer and traffic engineer.  Relying on the AASHO 1967 Report and the AASHTO 1996 Guide, Krueper opined that the magnolia tree stands too close to the roadway.  Relying on the California Highway Patrol's (CHP) data on prior reported accidents, he also noted that other accidents occurred on that roadway.  Extrapolating from those two opinions, Krueper concluded that the magnolia tree created a dangerous condition of public property.

### 1.     Krueper's opinion relying on the AASHO 1967 Report and the AASHTO 1996 Guide

Krueper stated the following:  "Dating back to 1967, a concept was developed by the [AASHO] regarding protection from roadside obstacles.  This included the need for

recovery areas and where a potential impact exists, particularly with poles or trees, that the potential severity be reduced by establishing a protective railing. This concept was enhanced in many other evaluations, including [the AASHTO 1996 Guide], developed by the newer organization known as the [AASHTO]. Their guide dealt with guardrail placement and/or the removal of fixed objects in close proximity to the travel lanes of a roadway." At the end of his declaration, he concluded: "For the reasons outlined above, it is the declarant's opinion that the subject fixed object (tree) in the median of a moderate- to high-speed roadway constitutes a dangerous condition of public property. Penetration by a vehicle would result in serious injury or death if striking the large tree positioned in the non-recoverable median area."

As discussed above, the AASHO 1967 Report and AASHTO 1996 Guide are not relevant to the facts and conditions of this case and also do not define the applicable legal standard here. "'[I]rrelevant or speculative matters are not a proper basis for an expert's opinion.'" (*Sargon*, *supra*, 55 Cal.4th at p. 770.) Thus, the trial court did not abuse its discretion in excluding Krueper's expert opinion, because that opinion relied on the appropriately excluded AASHO 1967 Report and AASHTO 1996 Guide.

In any event, we note the location of the magnolia tree actually complies with the recommendation in the AASHTO 1996 Guide. The magnolia tree stands seven feet from the inner edge of the number one lane of traffic; the AASHTO 1996 Guide recommends that trees be at least two to three meters (6.5 to 9.8 feet) away "from the edge of the traveled way."[2] As seven feet is within the recommended range of 6.5 to 9.8 feet, Krueper relies on material that does not support his reasoning. Our California Supreme Court has emphasized, "a court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning" and "'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" (*Sargon*, *supra*, 55 Cal.4th at p. 771.) This incongruity

---

[2] Both measure the distance from the magnolia tree to the portion of the road where cars are traveling.

constitutes an additional reason for upholding the trial court's exclusion of Krueper's opinion.

**2.       Krueper's summary chart and opinion relying on extrapolated data from prior reported accidents occurring on Colorado Boulevard**

Citing the CHP's data on prior reported accidents, Krueper created a summary chart of the reported accidents and opined that the prior accidents made it foreseeable that the accident in this case would occur.  "Due to the large number of side-swipe accidents on this section of highway, a concern existed for the protection of occupants in vehicles from the fixed objects, which could result in potential fatalities and injuries.  Information from CHP traffic collision reports and the City's access to their own records on the history of the accidents in the subject area, affirms this roadway experiences moderate to high speeds of vehicle movement.  This has resulted in numerous out-of-control accidents, as indicated in Exhibit 'D.' [the accident report summary at issue on appeal]  It was foreseeable that a catastrophic collision, such as this, would occur if appropriate safety measures were not taken." At the end of his declaration, he concluded that, because of the reasons outlined in his declaration, the magnolia tree created a dangerous condition of public property.

The trial court correctly excluded Krueper's accident report summary and his opinion relying on it.  The California Supreme Court has explained that an expert may not base an opinion upon a comparison if the matters compared are not reasonably comparable.  (See *Sargon*, *supra*, 55 Cal.4th at p. 770).  Further, strict standards govern whether evidence of prior accidents is admissible to show a dangerous condition of property.  "It is well-settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question."  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072.)  The prior accidents must have a connection in some way with the allegedly dangerous condition of the property.  (*Ibid.*)

12

Here, Krueper relied on 32 reported side-swipe collisions along a .7 mile stretch on Colorado Boulevard during the 11 years and 3 months between January 11, 1998 and April 7, 2009.[3] But Krueper made no comparison between the factual circumstances and conditions of those accidents and the one here. The face of the accident summary document alone reveals that more than half of the accidents involved a parked car, not two moving cars as in this case. Further, Krueper failed to specify whether in any of the other accidents a car entered the median or collided with one of the magnolia trees, as in this case. Importantly, the alleged dangerous condition here is the magnolia tree, but Krueper provides no indication that any of the other accidents involved something similar.

On appeal, the Cordovas effectively concede the lack of similarity. They argue it is "irrelevant" whether the prior accidents are similar to the one here, as Krueper relied on the data for the general principle that side-swipe accidents occur. Krueper next used that general principle to support his opinion that cars being forced off the road and onto the center median was foreseeable. Notably, Krueper's declaration does not state that any of the side-swipe accidents led to a car going off the road and onto the center median. It would be merely speculative to conclude that any of the prior side-swipe accidents had any connection to the alleged dangerous condition of the property, the magnolia tree. There exists "'too great an analytical gap between the data and the opinion proffered,'" and the trial court did not abuse its discretion in excluding the accident report summary and Krueper's opinion relying on it. (See *Sargon*, *supra*, 55 Cal.4th at p. 771.)

### D. Declaration of Kurt D. Weiss

The Cordovas offered the declaration of a mechanical engineer and accident reconstruction and restraint system expert, Kurt D. Weiss (Weiss). The trial court excluded Weiss's opinion relying on a 1979 Department of Transportation study to opine on the general principle that drivers frequently strike trees. The trial court also excluded

---

[3] Daily traffic volume is approximately 32,500 vehicles.

Weiss's opinion that the 6-inch curb of the center median in this case is insufficient to stop out-of-control vehicles thus creating a dangerous condition.

### 1. Weiss's opinion relying on the 1979 U.S. Department of Transportation study

Weiss admits that the 1979 U.S. Department of Transportation study "describes the search for cost-effective ways of reducing collisions on conventional state highways in California" and that "this study pertains to conventional highways with speed limits greater than that posted on Colorado Boulevard . . ." As is the case with his fellow expert Krueper's opinion relying on the AASHO 1967 Report and the AASHTO 1996 Guide, Weiss's opinion relying on a study of controlled-access high-speed highways is not relevant to the facts of this case. Again, it is black-letter law that "'irrelevant or speculative matters are not a proper basis for an expert's opinion.'" (*Sargon*, *supra*, 55 Cal.4th at p. 770.) Therefore, the trial court properly excluded Weiss's opinion relying on the 1979 U.S. Department of Transportation study.

The Cordovas argue on appeal that Weiss merely relied on the study for the general principle that drivers frequently strike trees. Weiss believed that the study was relevant to address "the need to protect the driving public from impact with fixed roadside objects." A trial court can exclude expert opinion that would not assist the trier of fact because it is not sufficiently beyond common experience. (See *Sargon*, *supra*, 55 Cal.4th at p. 769; Evid. Code, § 801.) It is common sense and common knowledge that drivers frequently strike trees, and the Cordovas do not deny this reality. Weiss's opinion would not assist the trier of fact, and therefore the trial court did not abuse its discretion in excluding that opinion.

### 2. Weiss's opinion regarding the 6-inch median curb

The trial court did not abuse its discretion in excluding both Weiss's opinion that the 6-inch curb of the center median is insufficient to stop out-of-control vehicles and his subsequent opinion that this created a dangerous condition. Weiss opined that the 6-inch curb "of the center medians of Colorado Boulevard" is "not sufficient to stop vehicles with standard diameter passenger car tires" and "not expected to redirect out-of-control

14

vehicles and prevent them from striking the large Magnolia trees." "Without adequate shielding, the 28 Magnolia trees present a significant collision danger for the motoring public on Colorado Boulevard."

The Cordovas, however, have alleged only that the location of the magnolia tree—too close to the travel portion of the roadway—created a dangerous condition. The Cordovas have not alleged that the height of the curb created a dangerous condition. Therefore, Weiss's opinion on a theory that the Cordovas do not allege is not relevant to the case here, and the trial court did not abuse its discretion in excluding it.

### E.      Declaration of Jacqueline G. Paver, Ph.D.

The Cordovas offered the declaration of a biomechanical engineer, Jacqueline G. Paver, Ph.D. (Paver), on "occupant injury potential" in various "scenarios" to show the existence of a dangerous condition.

The trial court did not abuse its discretion in excluding Paver's opinion that if the City had installed shrubs instead of a magnolia tree the injuries sustained would have been minimal. Paver's opinion is not relevant to the legal test here. The statute defines a dangerous condition as the property's condition "at the time of the injury." (See § 835.) The statute does not say that some hypothetical or preferable condition of the property determines whether the property is in a dangerous condition. Logically, the City cannot be liable based on what the condition of its property might have been. Instead, the analysis concerns only the actual condition of the property at the time of the injury. Thus, the trial court properly excluded Paver's opinion that shrubs would have caused less injury.

The trial court also did not abuse its discretion in excluding Paver's opinion "that a lateral crash involving a 35 to 42 m.p.h. vehicle impact speed into a tree will, more likely than not, result in a serious-to-fatal injury." It is common sense and common knowledge that colliding into trees at such speeds can lead to serious-to-fatal injuries. It would not assist the trier of fact for Paver to opine that colliding into trees at such speeds can lead to serious-to-fatal injuries, and the trial court did not abuse its discretion in excluding that opinion. (See *Sargon*, *supra*, 55 Cal.4th at p. 769; Evid. Code, § 801.)

15

**DISPOSITION**

We affirm the judgment.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.