Filed 12/20/23  Hernandez v. North County Transit Dist. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JANICE HERNANDEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NORTH COUNTY TRANSIT DISTRICT,<br><br>    Defendant and Respondent. | D080395<br><br><br>(Super. Ct. No.<br> 37-2019-00047794-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Affirmed.

The Law Office of Evan D. Williams and Evan D. Williams for Plaintiff and Appellant.

Devaney Pate Morris & Cameron, David R. Plancarte and Jeffery A. Morris for Defendant and Respondent.

Plaintiff and appellant Janice Hernandez sued defendant and respondent North County Transit District (NCTD) for allegedly maintaining a dangerous condition of public property after she tripped on a sidewalk having an approximately one and one-fourth-inch uplift.  NCTD successfully

moved for summary judgment on grounds the sidewalk uplift was "trivial" as a matter of law.

Hernandez contends the parties' experts' different measurements of the uplift's height created a triable issue of fact regarding its dangerousness. She also contends the court should have granted her requests for a continuance, and for permission to amend her complaint to add a common carrier cause of action. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts show that on September 2, 2018, Hernandez visited the Carlsbad Village Station (the Station), which is a train stop. While she was walking on the Grand Avenue sidewalk in the City of Carlsbad (Carlsbad) and stepped onto a concrete sidewalk on the premises of the Station, she tripped and fell due to an uneven joint at the transition between two concrete panels. She injured her left toe. Hernandez testified at her deposition that the incident occurred at approximately 11:00 a.m. It was sunny, and no shadows, debris, lighting conditions or anything else obstructed her view of the concrete sidewalk. This was Hernandez's first time visiting the Station. Just before she tripped, she was not looking at the ground, but was focused on a ticket booth ahead of her. She did not see the uplift before she fell. Nothing prevented Hernandez from walking on the portion of the sidewalk that did not have an uplift.

The joint between the adjoining concrete panels where the uplift lies is approximately seven feet wide in total. Separate from the uplift, the "remainder of the joint between the two concrete panels continued to decrease in vertical height differential moving further to the right, eventually down to zero height differential (i.e.[,] flush) for approximately two feet in width on the far right side of the joint."

2

A. *Hernandez's Complaint*

Hernandez sued Carlsbad[1] and NCTD, which is a public entity that provides public transportation to north San Diego County including via the COASTER, a commuter train service operating over between Oceanside and downtown San Diego. She alleged causes of action for negligence and premises liability.

B. *NCTD's Motion*

NCTD moved for summary judgment, and submitted several documents to support its claim the sidewalk uplift was trivial and no additional conditions showed dangerousness.[2] Tom Zetz, NCTD's legal coordinator for claims, stated in a declaration that on June 3, 2019, he personally visited the Station to investigate. He determined that the uneven pavement was part of a joint at the transition between two concrete panels, namely, a concrete walkway on the premises of the Station and Carlsbad's adjoining concrete sidewalk on Grand Avenue which borders the Station on the south. Zetz concluded: "Based on my visual observations, the entirety of the joint between the adjoining concrete panels was approximately [seven] feet wide in total and the Subject Condition was approximately [two] feet wide and on the far left side (facing north) of the joint. . . . it had a maximum vertical height differential of approximately [one and one-fourth]

---

[1]    Carlsbad is not a party to this appeal.

[2]    Among the documents NCTD submitted were a declaration by its attorney David Plancarte, who authenticated different exhibits including Hernandez's first amended complaint; NCTD's various requests for admissions and interrogatories propounded on Hernandez and her responses; Hernandez's deposition transcript including a photo of the sidewalk uplift; and declarations from Tom Zetz and Ed Garbo.

3

inches on the far left which gradually decreased moving to the right.  The remainder of this joint between the two concrete panels continued to decrease in vertical height differential, eventually down to zero height differential (i.e., flush) for approximately [two] feet in width on the far right side of the joint."

Zetz observed no broken pieces or jagged edges of concrete in or near the uplift, nor any surrounding conditions that obstructed the view of pedestrians walking across the uplift or that otherwise hid the uplift from pedestrians.

Zetz stated NCTD made post-accident remedial efforts:  "During my investigation of the Subject Condition on June 3, 2019[,] I learned that the Subject Condition had been painted yellow . . . on or about May 16, 2019."  Zetz also stated, "a search of NCTD's electronic database containing records as far back as the year 2000 showed that no prior incidents or complaints involving the Subject Condition occurred."

Ed Garbo, Carlsbad's risk manager, stated in a declaration:  "I am responsible for receiving and evaluating all government claims and lawsuits filed with . . . Carlsbad.  All claims and lawsuits are entered into a database which is maintained by [Carlsbad's] risk department.  I accessed the database and searched for all claims and lawsuits occurring at the sidewalk location where plaintiff claims she fell (which is located within [the . . . Station] . . . from September 2, 2008[,] to September 2, 2018.  Other than [Hernandez's] claim and complaint, I found no other claims or complaints at the location where [she] claims she fell."

NCTD contended that under Government Code section 830.2, which governs a public entity's liability for injury caused by a dangerous condition of public property, the pavement uplift was "not a 'dangerous condition' because the risk of injury it created was of such a minor, trivial, or

4

insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when used with due care in a reasonably foreseeable manner."

C.  *Hernandez's Opposition*

Hernandez opposed the motion and submitted evidence supporting her argument that a triable issue of material fact existed regarding the height of the uplift, and whether the sidewalk was a dangerous condition under Government Code section 835 et seq.[3]  Hernandez stated in her declaration: "On August 26, 2021, I used a tape measurer [*sic*] to measure the height of the raised concrete from grade at the initial point of impact.  It measured approximately [one and one-half inches]."  She also stated:  "During my deposition, I was asked which toe caused me to fall.  I was nervous.  I was very focused on ensuring my responses were perfectly accurate.  The question confused me because my toe did not cause me to fall.  I was never asked what party [*sic*] of my body first struck the raised concrete.  If I was asked that question, I would have said my left toe struck first, and my right toe struck second."  "During my deposition, I was asked if I looked back to see what caused me to trip.  I replied I did not.  [¶]  . . .  I believe I fell after my left big toe struck a raised portion of concrete at the intersection of . . . Carlsbad's

3    Hernandez submitted a declaration by her attorney, Mitch Oviedo, as well as a declaration and curriculum vitae by her forensic engineer expert Mark Burns.  The expert attached to his declaration several photographs of the sidewalk including from an onsite inspection he performed in November 2021; a journal article regarding biomechanical studies of human ambulation; an article regarding statistical data on toe clearance; a research study titled, "Why do we Bump into Things While Walking?" (some capitalization omitted); sun data, including sunrise, sunset and shadow length from the date of the incident; NCTD's design criteria for train stations; the 2010 Americans with Disability Act (ADA) Standards Section 303.4; Google Street View imagery archived; Hernandez's own declaration and attached photographs taken in August 2021; and Zetz's deposition transcript.

sidewalk and the beginning of the walkway on NCTD's Carlsbad Transit Center property. I believe it was my left toe that struck initially because it was more severely damaged, and my right big toe had a scrape-type injury."

Forensic engineer Burns stated in his declaration that on November 4, 2021, he measured the uplift and concluded it was "as high as [one and three-fourth] inches and slightly over [one and one-half] inches in the area where [ ] Hernandez indicated the trip and fall initiated." He stated: "In my opinion, [ ] Hernandez's perception of the subject uplift would have been inhibited by the lack of contrast between the subject sidewalk panels. Photographs of the incident area . . . show the subject sidewalk uplift would be difficult to perceive on the date of incident because the uplift is the same grey concrete color as the adjacent sidewalks on either side. Additionally, [ ] Hernandez stated in her deposition that it was her first time at the [Station]. . . . As such, her attention was diverted because she was looking for where to buy tickets. Finally, an adjacent tree would likely cast a shadow in the direction of the subject uplift. Sun data from the date of incident . . . shows the sun would cause the tree closest to Grand Avenue to cast a shadow in the direction of the subject uplift." Burns also stated NCTD violated the 2010 ADA Standards because "the subject uplift is greater than [one-half] inch and is not ramped[.]"

Hernandez argued a triable issue of material fact existed regarding the height of the uplift, as NCTD claimed it was at most one and one-fourth inches, but Burns calculated it was one and three-fourth inches at its highest point, and one and one-half inches at the point where Hernandez "impact[ed]" it.

Hernandez further argued that additional factors failed to establish that the uplift was a prima facie trivial defect. She countered NCTD's claim

6

it searched the database regarding other reported incidents of tripping at that location, arguing there was a triable issue "regarding ownership and control of the [i]ncident location and the reliability of [ ] Zetz's database search." Hernandez clarified she "does not allege leaves, shadows, or dirt obstructed her vision. Rather, her attention was naturally focused on the transit center platform and ticket kiosk, as this was [her] first time at the location. . . . Additionally, the rise in the sidewalk was masked by being the same color as the rest of the walkway." (Some capitalization omitted.)

Hernandez also argued the uplift was a dangerous condition, as shown by the fact NCTD took the remedial action of painting the joint between the two concrete slabs yellow. Referring to Burns's declaration, she argued NCTD failed to implement regular sidewalk inspections of its stations, which would have revealed the uplift and prompted some remedial action.

Hernandez in her memorandum of points and authorities requested leave to amend her complaint to state a cause of action for common carrier liability under Civil Code section 2168, which provides: "Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." She also claimed she needed to conduct additional discovery and depose NCTD's most knowledgeable person, because Carlsbad and NCTD each claimed the other owned or controlled the sidewalk; therefore, Hernandez needed "to determine whether [NCTD] retains complaints for locations it believes are outside its jurisdiction."

D. *NCTD's Reply*

NCTD in reply argued there was no triable issue of material fact: "First, [Hernandez] submits evidence that on August 26, 2021, *nearly three years* after her incident, [she] measured the Subject Condition and declared

7

that the height differential was approximately [one and one-half] inches at the assumed point of impact. However, pursuant to the authorities cited in [NCTD's] moving papers, this height differential is *still* within the [one and one-half]-inch sidewalk height differential generally held trivial as a matter of law. Second, [she] submits evidence that on November 4, 2021, *more than three years* after her incident, retained expert . . . Burns measured the Subject Condition and declared its height differential was slightly over [one and one-half] inches at the assumed point of impact."

NCTD also argued Hernandez's evidence "must be disregarded as it contradicts her own prior testimony. The measurements by [her] and her expert of the Subject Condition are purportedly at the 'point of impact' of her left foot . . . . But [she] testified at deposition she did not know which foot contacted the Subject Condition nor where the point of impact was." (Emphasis omitted.)

NCTD objected to several statements in the declarations by Oviedo, Hernandez, and Burns, and to their attached photographs and journal articles, including on grounds there was a lack of foundation and lack of personal knowledge to admit the photographs into evidence.

E. *The Court's Ruling*

The court in granting summary judgment overruled the evidentiary objections. It recognized NCTD is a public entity and that a finding of liability is governed by Government Code section 835. It ruled: "[NCTD] has met its burden to establish the defect was trivial. [Its] evidence shows that the deviation in height between the two sidewalk panels was no more than [one and one-fourth] inches. . . . [Hernandez] provided evidence that the height difference was [one and three-fourths] inches at its highest point but only [one and one-half] inches at the high point of impact. . . . Because both

8

of these measurements are within the range of difference in elevation considered to be a trivial defect, the court does not find this to be a disputed material fact."

Turning to additional factors to determine whether the defect presented a substantial risk of injury, the court pointed out there were no similar incidents involving the same walkway, and Hernandez produced no evidence supporting her contrary argument. It concluded: "There is no evidence presented that [Hernandez's] view was obstructed. [¶] [She] asserts that [NCTD] failed to implement regular sidewalk inspections or meet its own design criteria. This argument is premised on a finding that the defect is not trivial and would have been remedied had it been discovered by [NCTD] prior to [Hernandez's] incident. The fact that [she] might have been distracted because it was her first time at the station is not a legal basis to render the defect something more than trivial."

The court denied Hernandez's request for a continuance to conduct additional discovery, pointing out she failed to submit an affidavit justifying it. It did not address Hernandez's request to amend her complaint to add a common carrier cause of action.

DISCUSSION

I. *Summary Judgment Principles and Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) But "[s]ummary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

9

A defendant moving for summary judgment meets its burden of showing that a cause of action has no merit if the defendant has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(1).) "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Id., § 437c, subd.* (p)(2).)

" 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court, supra,* 4 Cal.5th at p. 618; see also *Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864 ["Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party"].

Despite that review standard, we presume the judgment is correct and Hernandez still bears the burden of demonstrating error. (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376; *Go Tek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1245 [" '[A]ppellant has the burden of showing error, even if [s]he did

10

not bear the burden in the trial court' "]; *Tubbs v. Berkowitz* (2020) 47 Cal.App.5th 548, 554.)

## II. *Legal Principles*

NCTD's liability is governed by the Government Claims Act (at times, the Act). (See *Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105.) "Section 835 [of the Act] prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property. [Citation.] [It] provides that a public entity may be held liable for such injuries 'if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.' In addition, the plaintiff must establish that either: (a) '[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition,' or (b) '[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' [¶] The Act defines a ' "[d]angerous condition" ' as 'a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' " (*Cordova v. City of Los Angeles, supra,* 61 Cal.4th at p. 1105, quoting Gov. Code, § 830.)

A separate section of the Act, Government Code section 830.2, addresses the standard for minor, trivial or insignificant risks. The *Cordova* court summarized these principles: "Public property is in a dangerous condition within the meaning of [Government Code] section 835 if it 'is

11

physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself.' [Citation.] A condition is not dangerous 'if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' " (*Cordova v. City of Los Angeles, supra,* 61 Cal.4th at p. 1105, in part quoting Gov. Code, § 830.2; see also *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 233-234.)

" 'Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used.' " (*Sambrano v. City of San Diego, supra,* 94 Cal.App.4th at p. 234, citing Gov. Code, § 830.2; see also *Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755 [even expert opinion on whether a given condition is dangerous does not eliminate the court's statutory task of independently evaluating the circumstances].) "This principle, referred to as the 'trivial defect doctrine' . . . is not an affirmative defense, but 'an aspect of duty that a plaintiff must plead and prove.' [Citation.] That is so because a property owner's duty of care 'does not require the repair of minor or trivial defects.' " (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757 (*Nunez*).) The doctrine "provides a check valve for the elimination from the court system of

12

unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399.)

In determining whether a property defect is trivial as a matter of law, most courts of appeal have applied a two-step analysis. "First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567–568 (*Stathoulis*); see *Nunez, supra*, 81 Cal.App.5th at p. 758 [applying *Stathoulis*'s two-step analysis]; *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1105 (*Huckey*) [same].)

One court of appeal, in reviewing a jury verdict, has recently rejected this two-step framework in favor of "a holistic multi-factor framework for assessing triviality." (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 108, 114.) Under this framework, "the size of the defect is but one of the many circumstances to be considered; however, size remains the ' "most important" ' of the dangerous condition factors." (*Ibid.*)

### III. *The Defect Here was not a Dangerous Condition*

To decide whether a particular defect is minor or trivial before allowing a jury to consider the question, our role under the foregoing authorities is to ask whether the evidence permits a reasonable person to conclude a

13

substantial risk of injury is involved when the sidewalk is used with due care in a reasonably foreseeable manner. (*Cordova v. City of Los Angeles, supra,* 61 Cal.4th at p. 1105; *Huckey, supra,* 37 Cal.App.5th at pp. 1110-1111.) We must construe the evidence most favorably to Hernandez.

First, our assessment of the type and size of the defect (*Huckey, supra,* 37 Cal.App.5th at p. 1105) supports a finding that the sidewalk uplift is trivial as a matter of law. As Zetz stated in his declaration, the entire joint between the two pavement slabs was seven feet wide, and the uplift was two feet wide, and had a maximum vertical height differential of approximately one and one-fourth inches on the far left which gradually decreased moving to the right. The remainder of the joint between the two concrete panels continued to decrease in vertical height differential, eventually down to zero height differential (i.e., flush) for approximately two feet in width on the far right side of the joint. This is consistent with defects found trivial in *Huckey, supra,* 37 Cal.App.5th 1092, *Nunez, supra,* 81 Cal.App.5th 749 and the cases on which they rely. (See, *Barrett v. City of Claremont, supra,* 41 Cal.2d at p. 72 [differential of one-half inch, with gradual curve upward]; *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, 530 [greatest height elevation was at a corner but decreased to level]; *Ursino v. Big Boy Restaurants, supra,* 192 Cal.App.3d at p. 398 [parties stipulated to a height variation between sidewalk slabs of no more than three-fourths of an inch without aggravating surrounding circumstances; on summary judgment, reasonable minds could not differ as to whether the defect was trivial as a matter of law].)

On appeal, Hernandez concedes that the court's finding "that the height differential in the area of the sidewalk that caused [her] to trip was less than one and one-half inches," and that this "finding is within the range that California law has recognized as trivial as a matter of law." She points

14

out the California Supreme Court's decision in *Barrett v. City of Claremont, supra,* 41 Cal.2d at pp. 72, 74, has permitted defects of one and one-half inches in height to be considered trivial.  However, she contends the court erred:  "First, [the court erred] because [NCTD] failed to present competent evidence that the defect was trivial.  Second, because even if [it] had presented competent evidence[, she] presented rebuttal evidence which was sufficient to create a triable issue of fact.  Third, the trial court failed to consider scientific evidence that the condition was dangerous."

Hernandez's argument that Zetz's measurements were erroneous and her conclusion that Zetz "admitted he failed to take steps to get an accurate measurement" are based on a mischaracterization of his deposition testimony.  In it, defense counsel, referring to a photo Zetz had taken of his measuring ruler, asked him:  "[N]ow the fact that you've acknowledged that the measuring tool itself is off by [one-eighth] of an inch.  *Do you believe your measurements were accurately taken at—on your site inspection on June of 2019?*"  (Italics added.)  Zetz answered, "Yes."  Defense counsel subsequently asked Zetz, "You indicate in your declaration that [the sidewalk uplift] was approximately [one and one-fourth] of an inch based upon what your measurements are.  You've indicated for the record that your measuring tool is off by [one-eighth] of an inch.  So is your testimony here today that . . . [one-eighth] of an inch as well as this gap that you acknowledged for the record would not skew your measurements in any way?"  Zetz responded, "I would . . . if you look at the top as well, it's just under one and one-fourth of an inch, so that small gap would true up to that inch and a quarter is what I feel, yes."  In the totality of his testimony, Zetz maintained that his measurement of the uplift at one and one-fourth inches at its highest point

15

was accurate even taking into account any discrepancy with the ruler shown in the photograph.

In contending a triable issue of material fact exists, Hernandez relies on her expert's measurements. NCTD argues the court erred in overruling its objection to those measurements. Even if we consider Burns's declaration and measurements, he claimed that the uplift was one and one-half inches "at the point of impact." This does not create a disputed fact because, as set forth above, that measurement falls within the boundaries of what courts have considered trivial defects.[4]

Hernandez contends the court erred by not considering additional evidence she presented to show dangerousness, particularly "relevant scientific studies that indicate the height differential was indeed dangerous." She adds: "These studies indicate that current case law addressing dangerous conditions is not based in reality." She acknowledges the California Supreme Court's jurisprudence surrounding the definition of

---

[4] NCTD claims Hernandez's measurements submitted in opposition to summary judgment must be disregarded because there is a conflict between Hernandez's deposition testimony in which she was asked, "So were you walking with your left toe first?" She replied, "I can't say yes or no to that one." She was also asked if at the time of the accident and immediately afterwards she noticed if there was a raised portion along the sidewalk. She replied, "No. I didn't notice it was raised." NCTD argues that, in her declaration, she states her left foot struck first, and her measurements are "purportedly at the 'point of impact' of [her] left toe." It is true that Hernandez in her deposition stated she was focused on getting to the kiosk and not on the sidewalk or on which foot struck first; therefore, there seems to be a discrepancy between her deposition testimony and her claim in her declaration that her left foot struck first. However, NCTD does not specifically show that she was asked at her deposition regarding the height differential; accordingly, we do not place much emphasis on the seeming contradiction in Hernandez's different statements.

16

trivial defects as measured by one and one-half inches (*Barrett v. City of Claremont, supra,* 41 Cal.2d at p. 74), but claims it has existed "for more than [65] years" and that her expert presented studies indicating "that current case law addressing dangerous conditions is not based in reality." She points to her expert's opinion "that according to studies, a differential of one-half inch is likely to make the average person trip [85] percent of the time, a differential of one and one-half inch a differential of [99] percent of the time." We conclude the current jurisprudence provides a workable way to implement the mandate of Government Code section 835 et. seq, which is meant to " 'guarantee that cities do not become insurers against the injuries arising from trivial defects.' " (*Thimon v. City of Newark, supra,* 44 Cal.App.5th at p. 755.)

In any case, the court did consider additional factors that comply with the applicable law and are supported by the evidence, and it specifically concluded, "There is no evidence presented that [Hernandez's] view was obstructed." It also concluded Hernandez had not presented evidence to support her claim that NCTD's database search was flawed. As stated, the incident occurred on a sunny morning. Hernandez conceded in her opposition papers that she did not allege that leaves, shadows, or dirt obstructed her vision. Further, there were no broken pieces or jagged edges in the area of the defect.

Hernandez does not renew her argument that the court failed to take into account the fact she was visiting the train station for the first time. But NCTD addresses the point in its responsive brief: "Although the incident occurred on [Hernandez's] first time visiting the . . . Station, it is important to note that her situation is unique. That a defect is plainly visible and used by many others without injury may indicate that a defect is trivial." (Emphasis

17

omitted.)  NCTD reiterates that despite the significant number of pedestrians who visit the station annually, there were no prior reports of persons falling on that same sidewalk.  NCTD also points out Hernandez testified in her deposition that nothing prevented her from maneuvering to the right side of the joint, which was flush.

We take into account the evidence showing Hernandez was not familiar with the area, as it was her first time walking that path.  Both *Huckey, supra,* 37 Cal.App.5th 1105 and *Stathoulis, supra,* 164 Cal.App.4th 559 mention a plaintiff's familiarity with or knowledge of the area as a relevant factor in the analysis of the dangerousness of a condition.  (*Huckey,* at p. 1105; *Stathoulis,* at p. 567.)  Other cases identify the plaintiff's knowledge of the area as a factor that "courts have considered" in the analysis.  (*Nunez, supra,* 81 Cal.App.5th at p. 758; *Fielder v. City of Glendale, supra,* 71 Cal.App.3d at p. 729.)  However, we also consider that on this record and, under the totality of the circumstances, that factor alone does not make the sidewalk a dangerous condition, particularly in light of the fact there were no reported incidents of other people falling at that spot at the Station.

In sum, we conclude that the size and nature of the sidewalk defect in this case was trivial as a matter of law, and while there is case law stating that an uplift above one-half inch poses a tripping hazard, no additional factors were adduced to create a triable issue as to whether the defect created a substantial risk of injury when the property is used with due care.  (*Nunez, supra,* 81 Cal.App.5th at pp. 759-760.)


IV.  *Request for Continuance*

Hernandez contends her counsel erroneously included the request for a continuance within the points and authorities he submitted in opposition to summary judgment; therefore, his failure to submit a supporting affidavit is a purely procedural error, and this court should reverse the grant of summary judgment or order that her counsel be allowed to correct the error by submitting an affidavit.

The summary judgment statute permits courts, under certain circumstances, to order a continuance for the opposing party to conduct additional discovery: "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (Code Civ. Proc., § 437c, subd. (h).)

An affidavit in support of a continuance must show that the facts to be obtained are essential to opposing the motion, that there is reason to believe such facts may exist, and it must explain why additional time is needed to obtain those facts. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152 ) We review the trial court's ruling for abuse of discretion. (*Ibid.*) " ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." ' " (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)

The purpose of the affidavit requirement is " 'to inform the court of outstanding discovery which is necessary to resist the summary judgment

19

motion.' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 397.) The summary judgment statute " 'requires more than a simple recital that "facts essential to justify opposition may exist." The affidavit or declaration in support of the continuance request must detail the specific facts that would show the existence of controverting evidence.' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 420.)

"[L]ack of diligence may be a ground for denying a request for a continuance of a summary judgment motion hearing." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 257.) "A good faith showing that further discovery is needed to oppose summary judgment requires some justification for why such discovery could not have been completed sooner." (*Ibid*.)

Hernandez's request for a continuance was limited to one paragraph in her opposition to summary judgment: "As discussed above, there is an open question as to ownership and control of the sidewalk intersecting the [Station's] walkway. [Carlsbad] denies it owns or controls the sidewalk. NCTD alleges, without support, that [Carlsbad] owns and controls it. Plaintiff needs to depose persons most knowledgeable at NCTD to determine whether it retains complaints for locations it believes are outside its jurisdiction. If not, NCTD's argument that it has no record of prior similar incidents will be significantly diminished." (Some capitalization omitted.)

Hernandez's failure to submit an affidavit with her request for a continuance deprived the court of an opportunity to evaluate whether the facts to be obtained were essential to opposing the summary judgment motion, that there was reason to believe such facts may exist, and why she needed additional time to obtain those facts. Accordingly, we conclude the court did not abuse its discretion in denying the continuance request.

In arguing that her failure to file an affidavit was a mere procedural error that the court could have remedied, Hernandez relies on *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1162, which is inapposite. In that case, the procedural error the appellate court found reversible was the trial court's denial of a motion to reconsider after it granted summary judgment based on these circumstances: "[T]he trial judge promulgated a 'courtroom local rule' that applied solely to cases in that judge's courtroom. This courtroom local rule, however, conflicted with the Code of Civil Procedure and the Government Code, was procedurally confusing, and led appellant's counsel to believe the court had taken a summary judgment motion off calendar. Counsel, therefore, filed no opposition or separate statement, and did not appear at the hearing on the motion." (*Kalivas, supra,* at p. 1154.) The court concluded Kalivas "deserved an opportunity to cure the defect so as to have the motion adjudicated on the merits." (*Id.* at p. 1162.) As the circumstances here are dissimilar, it does not suffice for Hernandez to claim that her counsel's cursory explanation of the basis for the continuance request in the opposition papers without an accompanying affidavit, which the statute requires, warrants reversal of the summary judgment.

## V. *Request to Amend Complaint*

Hernandez contends the court abused its discretion by implicitly denying her request to amend her complaint to add a cause of action for common carrier liability "because courts across the country have long held that common carrier liability can attach in these circumstances and there are no allegations of any misconduct which would support denial of that request."

The court may, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding.

21

(Code Civ. Proc., § 473, subd. (a)(1).)  A trial court's decision denying leave to amend is reviewed for abuse of discretion.  (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.)  It is Hernandez's burden to make a sufficient showing on appeal of an abuse of discretion.  (*Ibid.*)  "[A]s a matter of policy '[t]he discretion of the trial court should be upheld unless clearly abused.' "  (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939.)

Assuming proper notice, the trial court has wide discretion in determining whether to allow amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: "*including the conduct of the moving party and the belated presentation of the amendment.*  [Citation.]  . . .  The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment."  (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135-136, italics added.)  "The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself— be a valid reason for denial."  (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939-940.)

Hernandez did not comply with the statutory requirement that she file a noticed motion.  The record does not show grounds to amend, excusable

delay, or compliance with California Rules of Court, rule 3.1324.[5] Moreover, we cannot determine the adequacy of a proposed amended pleading when it is not part of the record. Hernandez made no factual showing of good cause for delay in the trial court. We point out Hernandez's fall occurred in September 2018. She filed her complaint in August 2020. NCTD moved for summary judgment in June 2021. Hernandez requested to amend her complaint in February 2022. But she knew from the outset that the fall occurred on the premises of a train station; therefore, her failure to explain the delay in seeking to add a common carrier liability cause of action is glaring. "[W]hen a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be *patently unfair* to allow plaintiffs to defeat [the] summary judgment motion.' " (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280, italics added.)

NCTD additionally argues that, even on the merits, Hernandez's amendment would fail, and it cites cases for the proposition that "restrictions

---

5    California Rules of Court, rule 3.1324 provides in part: (a) Contents of motion  [¶]  "A motion to amend a pleading before trial must:  [¶] (1) Include a copy of the proposed amendment or amended pleading, which must be serially numbered to differentiate it from previous pleadings or amendments; [¶] (2) State what allegations in the previous pleading are proposed to be deleted, if any, and where, by page, paragraph, and line number, the deleted allegations are located; and [¶] (3) State what allegations are proposed to be added to the previous pleading, if any, and where, by page, paragraph, and line number, the additional allegations are located.  [¶] (b) Supporting declaration [¶] A separate declaration must accompany the motion and must specify:  [¶] (1) The effect of the amendment; [¶] (2) Why the amendment is necessary and proper; [¶] (3) When the facts giving rise to the amended allegations were discovered; and [¶] (4) The reasons why the request for amendment was not made earlier."

imposed on common carriers are limited to carriage-related activities only, exempting other activities of the carrier even if on the same property." (See e.g., *Simon v. Walt Disney World, Co.* (2004) 114 Cal.App.4th 1162; *McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1017.) Because we conclude the trial court did not err in denying Hernandez's request on other grounds, we need not address this additional ground.

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.